KAREN L. LOEFFLER
United States Attorney

JAMES BARKELEY
THOMAS C. BRADLEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: jim.barkeley@usdoj.gov
        thomas.bradley@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:12-cr-00074-SLG-DMS |
| | ) | |
| Plaintiff, | ) | COUNT 1: |
| | ) | CONSPIRACY TO DISTRIBUTE |
| vs. | ) | A CONTROLLED SUBSTANCE |
| | ) | Vio. 21 U.S.C. §§ 846, 841(a)(1) |
| ROBIN GATTIS, CHAD JOSEPH | ) | & 841(b)(1)(C) |
| CAMERON, STEPHEN KIMBRELL, | ) | |
| KEVIN RUPP, SHANE O'HARE, BREN | ) | COUNTS 2, 4, 7 and 8: |
| MARX, and HAYLEE HAYS, | ) | UNLAWFUL IMPORTATION OF |
| | ) | CONTROLLED SUBSTANCE |
| Defendants. | ) | Vio. 21 U.S.C. §§ 952(a), |
| | ) | 960(a)(1) & (b)(3) |
| | ) | |
| | ) | COUNTS 3 and 9 : |
| | ) | ATTEMPTED POSSESSION OF |
| | ) | CONTROLLED SUBSTANCE |
| | ) | WITH INTENT TO DISTRIBUTE |
| | ) | Vio. 21 U.S.C. §§ 841(a)(1) & |
| | ) | (b)(1)(C) and 846 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

<pre>
                                      )  COUNT 5:
                                      )  POSSESSION OF CONTROLLED
                                      )  SUBSTANCE WITH INTENT TO
                                      )  DISTRIBUTE
                                      )    Vio. 21 U.S.C. § 841(a)(1) &
                                      )  (b)(1)(C)
                                      )
                                      )  COUNT 6:
                                      )  DISTRIBUTION OF
                                      )  CONTROLLED SUBSTANCE
                                      )  RESULTING IN DEATH
                                      )    Vio. 21 U.S.C. §§ 841(a)(1) &
                                      )  (B)(1)(C)
                                      )
                                      )  COUNTS 10-22:
                                      )  INTERNATIONAL MONEY
                                      )  LAUNDERING
                                      )    Vio. of 18 U.S.C. § 1956(a)(2)(A)
</pre>

# F I R S T   S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges that:

## COUNT 1

### CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCE

#### Introductory Allegations

1. The substance 3,4 methylenedioxy-N-methylcathinone is a synthetic cathinone which was listed by the Drug Enforcement Administration (DEA) as a Schedule I controlled substance on an emergency basis effective October 21, 2011. 21 CFR Part 1308.11(g)(7).

2. Synthetic cathinones are designer drugs of the phenethylamine class which are structurally and pharmacologically similar to amphetamine, 3,4-methylenedioxymeth-

amphetamine (MDMA), cathinone and other related substances.  Synthetic cathinones, including methylone, recently emerged on the United States' illicit drug market and were initially perceived as being legal alternatives to cocaine, methamphetamine, and MDMA. Prior to emergency scheduling by DEA, methylone was prohibited as a controlled substance analogue pursuant to the Controlled Substance Analog Enforcement Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, codified at 21 U.S.C. § 813.  Methylone is among the illicit drugs falsely marketed as "research chemicals," "R.C.s," "plant food," or "bath salts."  Methylone is known by the street names "molly," "M-1," "rolls," "fake ecstasy" and "MDMC."

### The Conspiracy

3. Beginning at a date uncertain, but at least on or about September 29, 2011, and continuing until at least on or about July 31, 2012, both dates being approximate and inclusive, in the District of Alaska and elsewhere, defendants ROBIN GATTIS, CHAD JOSEPH CAMERON, STEPHEN KIMBRELL, KEVIN RUPP, SHANE O'HARE, BREN MARX, and HAYLEE HAYS, together with other co-conspirators both known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree with each other to distribute, and to possess with intent to distribute, 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers, in violation of Title 21 United States Code, Sections 841(a)(1), and 841(b)(1)(C).

## Manner and Means of the Conspiracy

4. ROBIN GATTIS was the leader and organizer of the conspiracy. During the times relevant to this First Superseding Indictment, numerous other individuals joined the conspiracy knowing its goals and engaging in acts to further its purposes, including CAMERON, KIMBRELL, RUPP, O'HARE, MARX, HAYS and M.G.S., who is now deceased.

5. The goal of the conspiracy was to obtain the methylone powder from China and distribute it in Alaska. GATTIS was responsible for obtaining methylone powder from China, and encapsulating it for distribution in Alaska. GATTIS paid approximately $4-$6 a gram for methylone from China. GATTIS, at times assisted by J.H., M.G.S., CAMERON, and other coconspirators, then encapsulated the bulk methylone powder and sold it for $10-15 per 10-15 milligram capsule, with discounts for bulk purchases. In many instances, GATTIS gave the drugs to his closest associates, including CAMERON, RUPP and M.G.S., for a reduced rate, for free, or in tacit exchange for services such as wiring money, picking up packages of drugs, or transporting drugs. Most of the customers and other recipients receiving methylone from GATTIS were under the age of 21.

6. In or about September 2011, GATTIS learned that methylone was pending emergency scheduling. Nevertheless, he continued to import methylone from China and distribute it in Alaska, and in fact attempted to stockpile methylone in advance of the ban so that he could continue to distribute it after it became specifically illegal.

7. GATTIS regularly corresponded by email with the supplier, discussing the products, quantities, prices, and methods of shipment. GATTIS wired payments via Western Union from Alaska to China to pay for the shipments, and advised the source of the payments and relevant money transfer control number (MTCN) issued by Western Union. GATTIS wired funds himself, and also directed other members of the conspiracy, including at least two persons then under the age of 18 years, to wire, or cause to be wired, funds from Alaska to China to purchase methylone.

8. Once the source of supply received payment, the methylone was shipped from China to Alaska by common carrier. GATTIS arranged for shipments to be made to his own residence address, as well as to the addresses of other coconspirators, including O'HARE and CAMERON. Initially DHL was used, but after shipments began to be identified and intercepted by U.S. Customs and Border Protection, the conspirators began using Express Mail Service (EMS) from the U.S. Postal Service. After sending a shipment, the source emailed GATTIS the relevant DHL or EMS tracking number. This information enabled GATTIS to track the package online, and anticipate when delivery would occur.

### Acts in Furtherance of the Conspiracy

9. In furtherance of the criminal conspiracy and to effect the objects thereof, in the District of Alaska and elsewhere and on or about the dates set forth below, the Defendants and other associates and co-conspirators, both known and unknown to the

Grand Jury, committed and caused to be committed overt acts in furtherance of the conspiracy, including, but not limited to, the following:

    a.    On or about September 29, 2011, ROBIN GATTIS emailed the supplier in China, saying that he "would pay over a thousand dollars right now for M1, I just want to place my order and I've been working on all this week. If I can't do it today I don't think I'll be able to ever do it because of the ban."

    b.    On or about September 29, 2011, ROBIN GATTIS wired $346 from Alaska to the supplier in China to purchase 50 grams of methylone (MTCN 0372921775).

    c.    On or about September 30, 2011, the supplier shipped approximately 50 grams of methylone from China to ROBIN GATTIS in Alaska (EMS tracking number EE104432485CN).

    d.    On or about October 4, 2011, HAYLEE HAYS received and signed for package EE104432485CN.

    e.    On or about October 23, 2011, ROBIN GATTIS wired $2,500 from Alaska to the supplier in China to purchase one kilogram of methylone (MTCN 7474782948).

    f.    On or about October 26, 2011, the supplier shipped approximately one kilogram of methylone from China to ROBIN GATTIS, 230 W. 14th Ave. Apt. 317, Anchorage, Alaska 99654 (DHL tracking number 9733596331).

g. On or about October 28, 2011, ROBIN GATTIS received DHL package 9733596331 containing approximately one kilogram of methylone.

h. On or about November 26, 2011, ROBIN GATTIS caused "C.C.", who was then under the age of 18 years, to wire $980 from Alaska to the supplier in China to purchase 200 grams of methylone.

i. On or about November 27, 2011, ROBIN GATTIS emailed the supplier in China, confirming that "C.C." had sent the money and requesting that the methylone be shipped to SHANE O'HARE at 1830 E. Parks Hwy. Suite A113, Box 752, Wasilla, Alaska 99654. This is the address of The U.P.S. Store, and Box 752 was then assigned to defendant SHANE O'HARE. GATTIS stated in the email that methylone was now "just as illegal as plain old MDMA" and seeking a source of supply for MDMA (ecstasy).

j. On or about November 29, 2011, the supplier shipped approximately 200 grams of methylone from China to SHANE O'HARE, 1830 E. Parks Hwy. Suite A113 #752, Wasilla, Alaska 99654 (DHL tracking number 8543705915).

k. On or about December 13, 2011, ROBIN GATTIS wired $600 from Alaska to the supplier in China to purchase 100 grams of methylone (MTCN 5347016177). GATTIS requested that the shipment be sent to SHANE O'HARE, 1830 E. Parks Hwy. Suite A113 # 752, Wasilla, AK 99654.

l. On or about December 18, 2011, the supplier shipped approximately 100 grams of methylone from China to SHANE O'HARE, 1830 E. Parks Hwy. Suite A113 #752, Wasilla, Alaska 99654 (DHL tracking number 7322776780).

m. On or about December 26, 2011, ROBIN GATTIS wired $500 from Alaska to the supplier in China to purchase approximately 100 grams of methylone and other chemicals (MTCN 4150848284). GATTIS requested that the shipment be sent to SHANE O'HARE, 1830 Parks Hwy. Ste. A 113, #752, Wasilla, AK 99654.

n. On or about December 28, 2011, the supplier shipped approximately 100 grams of methylone from China to SHANE O'HARE, 1830 E. Parks Hwy. Suite A113 #752, Wasilla, Alaska 99654 (DHL tracking number 9750997001).

o. On or about January 8, 2012, ROBIN GATTIS wired $750 from Alaska to the supplier in China to purchase 150 grams of methylone (MTCN 5117894792). GATTIS requested that the shipment be sent to ROBIN GATTIS at his then-residence, 9400 W. Sleepy Circle, Wasilla, Alaska 99654.

p. On or about January 11, 2012, the supplier shipped approximately 150 grams of methylone from China to ROBIN GATTIS, 9400 W. Sleepy Circle, Wasilla, Alaska 99654 (DHL tracking number 9709297846).

q. On or about January 22, 2012, ROBIN GATTIS wired $500 from Alaska to the supplier in China to purchase approximately 100 grams of methylone (MTCN 8572350069).

r. On or about February 1, 2012, ROBIN GATTIS wired $186 from Alaska to the supplier in China to purchase approximately 22 grams of methylone (MTCN 8225383501).

s. On or about February 1, 2012, the supplier shipped approximately 22 grams of methylone from China to ROBIN GATTIS, 9400 W. Sleepy Circle, Wasilla, Alaska 99654 (DHL tracking number 9709297441).

t. On or about February 6, 2012, ROBIN GATTIS, KEVIN RUPP, and BREN MARX received package 9709297441 containing approximately 22 grams of methylone at 9400 W. Sleepy Circle, Wasilla, Alaska. This was a controlled delivery by state and federal agents, after which GATTIS and MARX were arrested on state drug charges.

u. On or about February 28, 2012, ROBIN GATTIS, upon his release from jail, emailed the supplier in China and said that "The last package you sent was intercepted by homeland security and I was arrested.... Is there any way I can have it resent to a different name and address or something if I found one?"

v. On or about February 29, 2012, ROBIN GATTIS ordered 22 grams of methylone from the supplier in China , as a replacement for the shipment

that was seized, to be shipped to 5055 S. Glenn Hwy, Palmer, Alaska, 99645.

w. On or about March 2, 2012, the supplier shipped approximately 22 grams of methylone from China to 5055 S. Glenn Hwy, Palmer, Alaska, 99645 (EMS tracking number EE596534657CN).

x. On or about March 20, 2012, package EE596534657CN was received by a conspirator in Palmer, Alaska.

y. On or about April 2, 2012, ROBIN GATTIS wired $500 to the supplier in China under the pseudonym "J.D." to purchase 150 grams of methylone (MTCN 7328560375). GATTIS requested shipment to SHANE O'HARE, 1830 E. Parks Hwy Ste. A113 #752, Wasilla, AK 99654.

z. On or about April 5, 2012, the supplier shipped approximately 150 grams of methylone from China to SHANE O'HARE, 1830 E. Parks Hwy Ste. A113 #752, Wasilla, AK 99654. (EMS tracking number EE5565429557CN).

aa. On or about April 12, 2012, SHANE O'HARE picked up package EE5565429557CN, containing approximately 150 grams of methylone at the UPS Store, 1830 E. Parks Hwy., Wasilla, Alaska and delivered it to ROBIN GATTIS, KEVIN RUPP, and M.G.S. in the parking lot of the Carr's Quality Center at 595 E. Parks Hwy. in Wasilla.

bb. On or about April 12, 2012, ROBIN GATTIS, KEVIN RUPP, and M.G.S. transported the package to an address known to the Grand Jury in Wasilla, Alaska for the purpose of encapsulating the methylone powder.

cc. On or about April 12, 2012, ROBIN GATTIS, M.G.S., and other persons known and unknown to the Grand Jury, at an address known to the Grand Jury in Wasilla, Alaska, placed the methylone powder into several hundred capsules.

dd. On or about April 12, 2012, M.G.S. sent text messages to numerous persons known and unknown to the Grand Jury advising that "We got rolls" and quoting prices. At one point he sent the message: "We just capped a thousand mollys from a quarter pound."

ee. On or about April 12, 2012, ROBIN GATTIS, KEVIN RUPP, and M.G.S. transported the methylone capsules from Wasilla to 8402 Lake Otis Parkway in Anchorage, where both KEVIN RUPP and M.G.S. then resided.

ff. Between on or about April 12 and April 15, 2012, ROBIN GATTIS distributed methylone to numerous persons, including J.H. at their residence near Wasilla, and M.G.S, at his residence of 8402 Lake Otis Parkway in Anchorage.

gg. Beginning on or about April 13, 2012, and continuing through on or about April 15, 2012, ROBIN GATTIS and M.G.S. hosted a party at 8402 Lake Otis Parkway, during which GATTIS distributed methylone to numerous persons attending the party.

hh. On or about April 15, 2012, M.G.S. sent a text message to ROBIN GATTIS that said "Can you bring me down twob [sic] more we need to talk."

ii.  On or about April 15, 2012, M.G.S. sent a text message to ROBIN GATTIS that said "Two last ones... Pleasde [sic]."

jj.  On or about April 15-16, 2012, ROBIN GATTIS realized that M.G.S. was in distress from, and eventually died as a result of the use of, methylone supplied to M.G.S. by GATTIS.  During this time, GATTIS did not summon emergency medical responders or other help for M.G.S., and GATTIS fled the scene.  GATTIS then advised a person known to the Grand Jury that they should check on M.G.S. at 8402 Lake Otis Parkway in Anchorage.  Upon arrival, the person discovered M.G.S. to be unresponsive and called 911.  Emergency medical services personnel responded and determined that M.G.S. was dead.

kk.  On or about April 16, 2012, ROBIN GATTIS emailed the supplier in China and said "My best friend took the M1 I got and died last night, we think it was a reaction with tylenol and he took too much or something but people have been saying it feels different from last time.  I'm going to throw away the rest and I don't think I'll be ordering from you again, thank you for your service though, and if there's any way I can get my money refunded it would help a lot in the coming months, but you don't have to."

ll.  On or about May 11, 2012, ROBIN GATTIS emailed the source of supply in China and said "Sorry for the alarming email before..." and asking "how

much M1 can you offer" if GATTIS' "friend" sends "between 750-1000$" to the supplier.

mm. On or about May 14, 2012, ROBIN GATTIS wired $454 to the supplier in China under the pseudonym "J.D." to purchase 135 grams of methylone (MTCN 0288136471). GATTIS requested shipment to "H.A." at 3210 Boniface Parkway Apt. #1 Anchorage, Alaska 99504.

nn. On or about May 15, 2012, the supplier shipped approximately 135 grams of methylone from China to "J.D.", 3210 Boniface Parkway Apt. #1 Anchorage, Alaska 99504 (EMS tracking number EE104386741CN).

oo. On or about May 19, 2012, a conspirator received package EE104386741CN in Anchorage, Alaska.

pp. On or about June 26, 2012, CHAD CAMERON wired $420 to the supplier in China to purchase 130 grams of methylone (MTCN 3047905453).

qq. On or about June 30, 2012, ROBIN GATTIS requested that the shipment be sent to CHAD CAMERON, 5735 South Old Glenn Hwy, Palmer, Alaska, 99645, which was then CAMERON's residence.

rr. On or about June 30, 2012, the supplier shipped approximately 135 grams of methylone from China to CHAD CAMERON, 5735 South Old Glenn Hwy, Palmer, Alaska, 99645 (EMS tracking number EE019965832CN). The package was intercepted by U.S. Customs in Chicago on or about July 3, 2012, and never delivered to Alaska.

ss. On or about July 9, 2012, STEPHEN KIMBRELL wired $700 from Alaska to the supplier in China to purchase methylone (MTCN 7469596263).

tt. On or about July 13, 2012, ROBIN GATTIS emailed the supplier in China and stated that STEPHEN KIMBRELL had wired money.

uu. On or about July 15, 2012, ROBIN GATTIS emailed the supplier in China and requested that "the M1 that got seized" be resent with the current order for "my friend that paid for the package that got seized, he paid over 400 and I want him to at least get something for it because he's blaming me for the shipment not arriving."

vv. On or about July 16, 2012, HAYLEE HAYS wired $500 from Alaska to the supplier in China to purchase methylone (MTCN 8214625437).

ww. On about July 16, 2012, at the direction of ROBIN GATTIS, "J.B.", a person then under 18 years of age, asked "K.P." to wire $500 from Alaska to the supplier in China to purchase methylone (MTCN 7635901749).

xx. On or about July 18, 2012, ROBIN GATTIS emailed the supplier in China and confirmed that HAYLEE HAYS and "K.P." had each sent $500. GATTIS requested shipment to STEPHEN KIMBRELL, 1520 Stellar Dr., Kenai, Alaska 99611. The supplier replied that they would "add a fake company name" and send "850g."

yy. On or about July 18, 2012, the supplier shipped approximately 850 grams of methylone from China to STEPHEN KIMBRELL, 1520 Stellar Dr., Kenai,

Alaska 99611 (EMS tracking number EE019966135CN). This package was intercepted by U.S. Customs in San Francisco, California.

zz. On or about July 24, 2012, ROBIN GATTIS texted STEPHEN KIMBRELL saying "...I'll send you the tracking number its in cali."

aaa. On or about July 30, 2012, STEPHEN KIMBRELL received package EE019966135CN. This was another controlled delivery by federal law enforcement agents.

bbb. On or about July 30, 2012, ROBIN GATTIS, after learning from STEPHEN KIMBRELL that the package had arrived, texted CHAD CAMERON, saying "It has begun." CHAD CAMERON then drove ROBIN GATTIS from Anchorage to Soldotna to meet with STEPHEN KIMBRELL and pick up the package.

ccc. On or about July 30, 2012, HAYLEE HAYS texted ROBIN GATTIS "No stupid shit Like bring back what you said you would! I want my shit!" GATTIS replied "That's insultingly retarded I live with you."

ddd. On or about July 30, 2012, ROBIN GATTIS and CHAD JOSEPH CAMERON received package EE019966135CN.

All of which is in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(C).

## COUNT 2

### UNLAWFUL IMPORTATION OF CONTROLLED SUBSTANCE

10. Between on or about February 1 and February 6, 2012, in the District of Alaska and elsewhere, defendant ROBIN GATTIS knowingly and intentionally imported into the United States from China 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers.

All of which is in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) & (b)(3).

## COUNT 3

### ATTEMPTED POSSESSION OF CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE

11. On or about February 6, 2012, in the District of Alaska, defendants ROBIN GATTIS and BREN MARX did knowingly and intentionally attempt to possess with intent to distribute 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers.

All of which is in violation of Title 21, United States Code, Sections 846 and 841(a)(1) & (b)(1)(C).

## COUNT 4

### UNLAWFUL IMPORTATION OF CONTROLLED SUBSTANCE

12. Between on or about April 2 and April 12, 2012, in the District of Alaska and elsewhere, defendant ROBIN GATTIS knowingly and intentionally imported into the

United States from China 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers.

All of which is in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) & (b)(3).

## COUNT 5

### POSSESSION OF CONTROLLED SUBSTANCE
### WITH INTENT TO DISTRIBUTE

13. On or about April 12, 2012, in the District of Alaska, defendants ROBIN GATTIS, KEVIN RUPP, and SHANE O'HARE did knowingly and intentionally possess with intent to distribute 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers.

All of which is in violation of Title 21, United States Code, Section 841(a)(1) & (b)(1)(C).

## COUNT 6

### DISTRIBUTION OF CONTROLLED SUBSTANCE
### RESULTING IN DEATH AND SERIOUS BODILY INJURY

14. Between on or about April 12, 2012, and April 15, 2012, in the District of Alaska, defendant ROBIN GATTIS, did knowingly possess with intent to distribute, and did knowingly and intentionally distribute, 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers, the use of which resulted in death and serious bodily injury to M.G.S.

All of which is in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(C).

## COUNT 7

### UNLAWFUL IMPORTATION OF CONTROLLED SUBSTANCE

15. Between on or about June 19, 2012 and July 6, 2012, in the District of Alaska and elsewhere, defendants ROBIN GATTIS and CHAD JOSEPH CAMERON knowingly and intentionally imported into the United States from China 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers.

All of which is in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) & (b)(3).

## COUNT 8

### UNLAWFUL IMPORTATION OF CONTROLLED SUBSTANCE

16. From on or about July 13 through July 30, 2012, in the District of Alaska and elsewhere, defendant ROBIN GATTIS knowingly and intentionally imported into the United States from China 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers.

All of which is in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) & (b)(3).

## COUNT 9

### ATTEMPTED POSSESSION OF CONTROLLED SUBSTANCE
### WITH INTENT TO DISTRIBUTE

17. On or about July 30, 2012, in the District of Alaska, defendants ROBIN GATTIS, CHAD JOSEPH CAMERON, and STEPHEN KIMBRELL did knowingly and

intentionally attempt to possess with intent to distribute 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers.

All of which is in violation of Title 21, United States Code, Sections 846 and 841(a)(1) & (b)(1)(C).

## COUNTS 10-22

## INTERNATIONAL MONEY LAUNDERING

18. On or about the dates listed below, within the District of Alaska, the defendants named did transport, transmit, and transfer monetary instruments and funds from Alaska, a place in the United States, to China, a place outside the United States, with the intent to promote specified unlawful activity, namely, importation, possession with intent to distribute, and actual distribution of 3,4 methylenedioxy-N-methylcathinone, its salts, isomers, and salts of isomers, as further described in Counts 1 through 9 of this First Superseding Indictment.

| Count | Defendant Charged | Date | Amount Sent |
|---|---|---|---|
| 10 | ROBIN GATTIS | October 23, 2011 | $2,500.00 |
| 11 | ROBIN GATTIS | November 26, 2011 | $980.00 |
| 12 | ROBIN GATTIS | December 13, 2011 | $600.00 |
| 13 | ROBIN GATTIS | December 26, 2011 | $500.00 |
| 14 | ROBIN GATTIS | January 8, 2012 | $750.00 |
| 15 | ROBIN GATTIS | January 22, 2012 | $500.00 |
| 16 | ROBIN GATTIS | February 1, 2012 | $200.00 |
| 17 | ROBIN GATTIS | April 2, 2012 | $500.00 |

| 18 | ROBIN GATTIS | May 14, 2012 | $474.00 |
| 19 | ROBIN GATTIS<br>CHAD CAMERON | June 19, 2012 | $420.00 |
| 20 | ROBIN GATTIS<br>STEPHEN KIMBRELL | July 9, 2012 | $700.00 |
| 21 | ROBIN GATTIS<br>HAYLEE HAYS | July 16, 2012 | $500.00 |
| 22 | ROBIN GATTIS | July 17, 2012 | $500.00 |

All of which is in violation of Title 18, United States Code, Section 1956(a)(2)(A).

A TRUE BILL.

 s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ James Barkeley
JAMES BARKELEY
Assistant U.S. Attorney
United States of America


s/ Thomas C. Bradley
THOMAS C. BRADLEY
Assistant U.S. Attorney
United States of America


s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney
United States of America


DATE:  12/12/12